## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM PADULA, CRAIG ANDREWS AND VEYEZER LLC | Case No. 3:24-cv-00913-VAB |
| Plaintiffs, | |
| v. | |
| TED DINSMORE, SPHEREGEN HOLDING, LLC AND SPHEREGEN TECHNOLOGIES, LLC | |
| Defendants. | July 15, 2024 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Pursuant to Rules 12(b)(1), (b)(6), and (b)(9) of the Federal Rules of Civil Procedure, the Defendants - -Ted Dinsmore ("Dinsmore"), Spheregen Holding, LLC ("Holding") and Spheregen Technologies, LLC ("Spheregen Tech") (collectively, "Defendants") - - hereby move to dismiss with prejudice Counts 3, 4, 5, and 6 of the Amended Complaint (ECF # 17) filed by the Plaintiffs - - William Padula, ("Padula"), Craig Andrews ("C. Andrews"), and VeyeZER LLC ("VeyeZER") (collectively, "Plaintiffs").

### I.   SUMMARY OF ARGUMENTS

This lawsuit is a thinly-veiled effort to redo a carefully-negotiated and comprehensive "Confidential Settlement Agreement and Release" (ECF # 17, Ex. A) ("the Settlement Agreement with Mutual Releases"), which governs the termination of a multi-year business relationship between the Parties, including, *inter alia*: Dinsmore's withdrawal as a member of VeyeZER; the distribution of certain software and related intellectual property assets pursuant to a detailed

"Transfer Schedule;"[1] and the terms governing the breakup of the business arrangement between Spheregen Tech and VeyeZER. Plaintiffs seek to enforce certain provisions of the Settlement Agreement while conveniently ignoring other provisions. Plaintiffs cannot have it both ways.

As a threshold matter, the Settlement Agreement with Mutual Releases is controlling and necessitates dismissal of Plaintiffs' purported claims of trademark infringement (Count 3); copyright infringement (Count 4); fraud and fraudulent concealment (Count 5); and unjust enrichment and constructive trust (Count 6). These claims are barred by the Plaintiffs' release of all present and future claims "of any nature whatsoever, known or unknown, which either Party has, or may have had, against the other Party, whether or not apparent or yet to be discovered, or which may hereafter develop. . . ," AC, Ex. A at § 3(a)-3(e), as well as Plaintiffs' assignment to Spheregen Tech of "**all right title and interest to the VG Software**" [*i.e*., VeyeZER Graph]. AC, Ex. A at § 1(a)(ii) (emphasis added). The dismissal should be with prejudice because (1) Plaintiffs already took a "second bite of the apple" by filing an Amended Complaint, and (2) the release is a complete bar to these claims, rendering futile any proposed amendment.

Assuming *arguendo* that the Court were to consider the merits of Counts 3-6 (which it need not do because the Settlement Agreement with Mutual Releases is a total bar to these claims) dismissal is still warranted for the following separate and independent reasons:

- The trademark claim (Count 3) is not plausible under FRCP 12(b)(6) because VeyeZER does not allege sufficient facts to satisfy each of the elements or otherwise specify how **each** particular defendant allegedly engaged in actionable action;

---

[1] The Transfer Schedule is part of the Settlement Agreement with Mutual Releases, which is annexed to the Amended Complaint.

- The copyright claim (Count 4) should be dismissed because (1) VeyeZER has not met the Copyright Act's mandatory prerequisites for bringing a copyright claim, (2) VeyeZER has not pled sufficient facts to meet the beneficial ownership test, and (3)VeyeZER has improperly lumped together the corporate defendants and has not articulated the wrongful conduct allegedly undertaken by each defendant;

- The individual plaintiffs, Padula and C. Andrews, lack Article III standing to bring the state law tort claims (Counts 5 and 6) because they have not alleged any individualized harm that is separate and distinct from the injury allegedly suffered by the LLC;

- The Plaintiffs have not adequately pled fraud or fraudulent concealment under FRCP 12(b)(6) or 12(b)(9); and

- The Plaintiffs have not adequately pled unjust enrichment under FRCP 12(b)(6) or 12(b)(9).

Lastly, Defendants respectfully request that the Court dismiss with prejudice any purported conversion claim because although Count Five of the Plaintiffs' original complaint alleged a purported conversion claim, the Plaintiffs abandoned that claim by not re-alleging it in the Amended Complaint.

## II.    **FACTUAL BACKGROUND**

### A.  **The Parties' Business Together**

VeyeZER is "a Connecticut Limited Liability Company organized on or about February 7, 2018." Amended Compl. ¶ 1 ("AC"). Between 2018 and 2023, plaintiffs Padula and C. Andrews, nonparty Judy Andrews ("J. Andrews"), and defendant Dinsmore were members of VeyeZER ("the VeyeZER Members"). *Id.* at ¶ 99 ("The managing members of VeyeZER at all times pertinent to

this claim were Padula, Dismore, C. Andrews, and J. Andrews."). In addition, defendant Spheregen

Tech "performed various software development services" on the software which is subject to the

Settlement Agreement with Mutual Releases, specifically: VeyeZER: Visual Assessment (the "VA

Software"), VeyeZER Graph, (the "VG Software"), and the Pave Software. *Id.* at ¶ 6.  This lawsuit

arises from Plaintiffs' complaints about the operation of VeyeZER and Spheregen's alleged "use"

of the VG Software even though these matters were addressed in the Settlement Agreement with

Mutual Releases.

### B.  The Irreconcilable Differences between VeyeZER's Members Leading to the Settlement Agreement with Mutual Releases

The Settlement Agreement with Mutual Releases[2] governs the breakup of the parties'

business relationship and was entered into by Spheregen Tech and Dinsmore (collectively, the

"Spheregen Parties") on the one hand and by VeyeZER, Padula, C. Andrews, and J.  Andrews

(collectively, the "VeyeZER Parties") on the other hand. (ECF # 17, Ex. A).  Notably, the Parties

***released all present and future claims, known and unknown, against each other*** as part of a

comprehensive settlement agreement that was designed to effectuate a business divorce and tie

up all loose ends between the parties.

The circumstances leading to breakup of the parties' business arrangement include, *inter*

*alia*, a disagreement among the members of the LLC over the business's ownership,

---

[2] A complaint is "'deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.'" *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)). Similarly, "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006).

management, and operation, and VeyeZER's failure to fully compensate Spheregen Tech for its

services:

> WHEREAS, the VeyeZER Members have irreconcilable differences as to the operation and strategic plan of VeyeZER;
>
> . . . .
>
> WHEREAS, Spheregen has performed software development services for VeyeZER on the software known as VeyeZER: Visual Assessment, which leverages augment reality and virtual reality to modernize the practice of vision assessment (the '**VA Software**'), and believes it has not been fully compensated for such services.
>
> . . . .
>
> WHEREAS, Spheregen has performed software development and hosting services for VeyeZER on the software known as VeyeZER Graph, an assessment tool which uses the study of eye movements to provide insight on the underlying causes of reading impairment (the '**VG Software**'), and believes it has not been fully compensated for its services and operations;
>
> . . . .
>
> WHEREAS, Spheregen has performed software development services for Padula on the software known as Pave, which is an application to rehabilitate peripheral vision (the '**Pave Software**'), and believes it has not been compensated for such services;
>
> . . . .

AC, Ex. A at 1. (emphasis original).

### C. The Terms of the Settlement Agreement with Mutual Releases

"[T]he Parties desire[d] to resolve their differences by entering into this Agreement under

the terms and conditions set forth herein." AC, Ex. A at 2. Those terms include an agreement that

the settlement was "agreed upon as a compromise and final settlement of disputed claims. . . . ,"

and a framework and schedule for the transfer of, *inter alia*, the VA Software, the VG Software,

and the Pave Software, and mutual general releases. AC, Ex. A, § 1, 3, 6. Further, each

sophisticated party "acknowledge[d] that they have relied upon the legal advice of their respective attorneys, who are attorneys of their own choosing." AC, Ex. A, § 15.

The Settlement Agreement with Mutual Releases provides a framework in which the parties divided the businesses assets, addressed how the entity's attorneys' would be paid, addressed each parties' tax obligations, and acknowledged a personal investment by C. Andrews and J. Andrews by providing a payment schedule by Spheregen to C. Andrews and J. Andrews. For example, the parties agreed to the following software transfers in Section 1(a):

(a) <u>Software Transfers</u>.
- (i)    VA Software. Spheregen hereby assigns and transfers to VeyeZER all of its right, title and interest to the VA Software. Spheregen will transfer the existing VA Software. . . according to the terms and schedule. . . (the "Software Transfer Schedule").

- (ii)    VG Software. **VeyeZER and the VeyeZER Parties hereby assign and transfer to Spheregen all of their respective right, title and interest to the VG Software**. Within five (5) business days of the Effective Date, VeyeZER and the VeyeZER Parties shall remove all VG Software code and documentation from their respective systems and destroy any physical versions of the documentation, if any.

- (iii)   PAVE Software. Spheregen hereby assigns and transfers to Padula all of its right, title and interest to the PAVE Software. Spheregen will transfer the existing PAVE Software. . . to Padula according to the terms and schedule set forth in the Transfer Schedule.

AC, Ex. A, § 1(a) (emphasis added). The Software Transfer Schedule set forth certain benchmarks and other requirements to trigger how and when the software transfers would happen.

Section 1(b) addresses the Patent Assignment and License. Specifically, Dinsmore would provide a patent assignment in favor of VeyeZER for the VA Patents and the VeyeZER Parties would provide an "exclusive perpetual, worldwide, fully-paid up patent license in favor of Spheregen, fully licensing any and all of their respective rights as inventors and applicants in and to the portions of the VG Patent that apply to the VG Software." AC, Ex. A. § 1(b)(ii).

In Section 1(d), "[t]he Parties acknowledged a personal investment of C. Andrews and J. Andrews made…" and "[a]s full compensation for this investment, Parties agree. . . Spheregen shall pay C. Andrews and J. Andrews, collectively, an amount equal to 5% of net sales of the VG Software or products based primarily thereon." AC, Ex. A, § 1(d).

Section (1)(e) addressed Dinsmore's withdrawal from VeyeZER and provides that "VeyeZER shall take all such action as may be necessary to effect the withdrawal of Dinsmore." AC, Ex. A, § 1(e).

The mutual general releases expressly release all present and future claims, known and unknown, against all parties. AC, Ex. A, § 3. Specifically:

> <u>Mutual Release</u>. The Parties, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge the other Party, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either Party has, or may have had, against the other Party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from:
>
> (a)    the ownership, management and operations of VeyeZER;
>
> (b)    Spheregen's development of, and any additional services provided by Spheregen related to, the VA Software, the VG Software and the PAVE Software;

(c)     any agreement between the Parties;

(d)     any other matter between the Parties; and/or

(e)     any claims under federal, state, or local law, rule, or regulation.

This Agreement resolves any claim for relief that is, or could have been alleged, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs, and attorneys' fees related to or arising from the items in Sections 3(a) through (e) above.

. . .

Acknowledgment of Settlement. Each Party, as broadly described in Section 3 above, acknowledges that (a) the consideration set forth in this Agreement, which includes, but is not limited to, the Settlement Transactions, is in full settlement of all claims or losses of whatsoever kind or character that they have, or may ever have had, against the other Parties, as broadly described in Section 3 above, and (b) by signing this Agreement, and accepting the consideration provided herein and the benefits of it, they are giving up forever any right to seek further monetary or other relief from the other Parties, as broadly described in Section 3 above, for any acts or omissions up to and including the Effective Date.

*Id.* at §§ 3, 5.

Other sections of the Settlement Agreement with Mutual Releases that further demonstrate that the parties intended to completely part ways and tie up all loose ends include:

- Section 11. "New or Different Facts: No Effect… this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true." *Id.* at § 11.

- Section 10. "Entire Agreement… The recitals set forth at the beginning of the Agreement and the exhibits to this Agreement are incorporated by reference and made part of this Agreement. This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof….." *Id.* at § 10.

The Agreement is governed by Connecticut law. *Id.* at § 13.

D. **The Instant Dispute between the Parties**

The first two counts of the Amended Complaint (*i.e.*, breach of contract and breach of the covenant of good faith and fair dealing) erroneously allege that two of the defendants (*i.e.*, Spheregen Tech and Dinsmore) have not acted in accordance with the Agreement. The Defendants deny these assertions and will show in discovery that they performed their obligations and that it is the Plaintiffs who are in breach of contract and breach of the covenant of good faith and fair dealing. However, those counts are not the subject of this 12(b)(6) motion.

Counts 3 and 4 of the Amended Complaint allege trademark infringement (against all defendants) and copyright infringement (against only Holding and Spheregen Tech). The Defendants deny these false assertions. Moreover, as discussed below, these claims are precluded by the Settlement Agreement with Mutual Releases and otherwise fail to state a claim upon which relief can be granted under FRCP 12(b)(6).

Lastly, Counts 5 and 6 of the Amended Complaint purport to allege state law claims for fraud and fraudulent concealment (Count 5) and unjust enrichment and constructive trust (Count 6) arising from a dispute over two alleged June 2022 transfers of funds and an alleged August 2022 representation by Dinsmore to Padula about a future transfer of funds.[3] However, these alleged events happened more than a year before the September 2023 Settlement Agreement with Mutual Releases. That agreement bars these claims. They should also be dismissed for the separate and independent reason that they fail to state a plausible claim under FRCP 12(b)(6) and (b)(9). Further, the individual plaintiffs also lack standing to bring these claims under FRCP 12(b)(1).

---

[3] These allegations are false and discovery will show that Plaintiffs were aware of and acquiesced to fund transfers. Discovery will also show that Plaintiffs unilaterally, and without Defendants' consent, drained funds from VeyeZER's bank account.

III.    **PROCEDURAL BACKGROUND**

Plaintiffs brought a pre-suit special proceeding in the Connecticut Superior Court against the Defendants in which they filed an application for an injunction, order for hearing and notice, and a proposed complaint with a return date of June 11, 2024.[4] On May 13, 2024, counsel for the Plaintiffs and Defendants appeared before the New Haven Superior Court for an in-person status conference on the injunction application. (CT Dkt. # 101.00). The State Court scheduled another status conference for August 30, 2024. (CT JDNO Notice dated 05/13/2024). Thereafter, the Defendants filed their notice of removal. (ECF # 1).

On June 8, 2024, the Plaintiffs filed with this Court an Amended Complaint (ECF # 17), purporting to assert six claims. Notably, the Defendants did not re-allege a conversion claim in the Amended Complaint even though they included a conversion claim in their original complaint. The below chart summarizes the difference between the two complaints.

| Plaintiffs' Original Complaint | Plaintiffs' Amended Complaint |
|---|---|
| **First Count:** Breach of Contract (by VeyeZER against Spheregen Tech and Dinsmore) | **First Count:** Breach of Contract (by VeyeZER against Spheregen Tech and Dinsmore) |
| **Second Count:** Breach of Contract/Breach of the Implied Covenant of Good Faith and Fair Dealing (by Padula and C. Andrews against Spheregen Tech and Dinsmore) | **Second Count:** Breach of Contract/Breach of the Implied Covenant of Good Faith and Fair Dealing (by Padula and C. Andrews against Spheregen Tech and/or Dinsmore) |
| **Third Count:** Federal Trademark Infringement (by VeyeZER against all Defendants) | **Third Count:** Federal Trademark Infringement (by VeyeZER against all Defendants) |
| **Fourth Count:** Copyright Infringement (by VeyeZER against Spheregen Holding and Spheregen Tech) | **Fourth Count:** Copyright Infringement (VeyeZER against Spheregen Holding and Spheregen Tech) |

---

[4] Pursuant to Practice Book § 10-8, Defendants' response to Plaintiffs' original complaint was not due until July 11, 2024, *i.e.*, thirty days from the return date. P.B. § 10-8 ("Commencing on the return day. . . , pleadings, including motions and requests addressed to the pleadings, shall advance within thirty days from the return day."). Defendants removed this matter to federal court prior to the return date.

| **Fifth Count:** Conversion (by VeyeZER and C. Andrews against Dinsmore) | **Fifth Count:** Fraud and Fraudulent Concealment (by all Plaintiffs against Ted Dinsmore) |
|---|---|
| **Sixth Count:** Unjust Enrichment and Constructive Trust (by VeyeZER and C. Andrews against all Defendants) | **Sixth Count:** Unjust Enrichment and Constructive Trust (by VeyeZER and C. Andrews against all Defendants) |

Defendants later filed with this Court a motion for preliminary injunction (which seeks different injunctive relief than that which was requested in the application for a temporary injunction in State Court).[5] (ECF # 19). Defendants dispute the erroneous assertions set forth in the motion papers and are simultaneously filing a separate memorandum of law urging this Court to deny the motion for injunctive relief in its entirety.

## IV.    LEGAL STANDARDS

### A.  Rule 12(b)(1)

Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir. 2000).

### B.  Rule 12(b)(6)

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding the motion to dismiss, the Court "accept[s] all allegations in the complaint as true and draw[s] all inferences in the non-moving parties favor." *LaFaro v. N.Y. Cardiothoracic Grp*., 570 F.3d 471, 475 (2d Cir. 2009) (citation and internal quotation marks omitted). Although the Court must "accept[ ] as true the factual allegations in the complaint and draw[ ] all inferences in the

---

[5] Plaintiffs did not request a temporary restraining order from either the State Court or this Court.

plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), that tenet "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alteration in original) (quoting *Iqbal*, 556 U.S. 687).

**C.  Rule 12(b)(9)**

Claims that sound in fraud are subject to heightened pleading standards. Fed. R. Civ. P. 9(b) ("[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Rule 9(b) requires that factual allegations reflect the who, what, when, where, and how of the alleged fraud, and "ordinarily requires a complaint alleging fraud to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc*., 865 F.3d 71, 81 (2d Cir. 2017).

**V.  ARGUMENT**

**A.  The Settlement Agreement with Mutual Releases Is a Complete Bar to the Federal Claims (Counts 3 and 4) and State Law Tort Claims (Counts 5 and 6)**

**1.  The Assignment of "All Right, Title and Interest" to VeyeZER Graph and the Release Necessitate Dismissal of The Trademark and Copyright Claims**

The claims alleging trademark and copyright infringement (Counts 3 and 4) fail as a matter of law because the Release executed by Plaintiffs in favor of the Defendants less than a year prior to this action "constitutes a complete bar to an action on a claim which is the subject of the release." *Keybank National Assoc. v. Hirsch*, No. FSTCV125013953, 2014 WL 6805037, at *10 (Conn.Sup.Ct. Oct. 23, 2014) (citing *Centro Empresial Cempresa S.A. v. Am Movil S.A.B. C.V.*, 17 N.Y. 3d 269, 276 (2011); *see also Tallmadge Bros., Inc. v. Iroquis Gas Transmission Sys., L.P.*, 252 Conn. 479, 481 (2000) (holding that "a general release and a merger clause contained in contracts

12

between commercial parties operates to preclude future claims of contractual liability against the party for whose benefit the general release was executed."). Here, each of the defendants is covered by the release.[6]

      "[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Tallmadge Bros., Inc.,* 252 Conn. at 495 (internal quotation marks omitted.). In Connecticut, "[a] release agreement [is] a contract. It is well settled that a release, being a contract whereby a party abandons a claim to a person against whom that claim exists, is subject to rules governing the construction of contracts." *Giano v. Salvatore*, 136 Conn. App. 834, 841, *cert. denied*, 307 Conn. 926, (2012). Further, "[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Pesino v. Atlantic Bank of New York*, 244 Conn. 85, 92 (1998) (internal quotation marks omitted.). The Connecticut Supreme Court's *Tallmadge* decision is controlling here.

      In *Tallmadge*, the parties entered into a commercial agreement which released future claims concerning the construction of a pipeline. 252 Conn. at 499 (the release was "from all actions, causes of action, debts, sums of money, agreements, promises, trespasses, damages, judgment, executions, claims and demands whatsoever, in law, admiralty or equity. . . by reason of any matter, cause or thing whatsoever, incident to the construction[7] of the Pipeline, and any acts in connection therewith, including without limit, loss of or damage. . . ."). The *Tallmadge* court observed that the

---

[6] Dismore and Spheregen Tech are signatories to the Settlement Agreement with Mutual Releases. Spheregen Holding is also covered by the release. *See* AC, at ¶ 82 ("Dinsmore was also a member and principal of Spheregen Holding and Spheregen Tech.").

[7] The construction occurred *after* the parties entered into the settlement agreement.

release of future claims was "all encompassing," and that the agreement included a merger clause. *Id*. Here, as in *Tallmadge*, the parties entered into a comprehensive settlement agreement with an "all encompassing release" (including a release of future claims) and a merger clause. AC, Ex. A at § 3, 10.

Specifically, the Settlement Agreement with Mutual Releases was a comprehensive contract which included a release of "***all known and unknown claims***," "***whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from***:

> (a)    *the ownership, management and operations of VeyeZER;*
>
> (b)    *Spheregen's development of, and any additional services provided by Spheregen related to, the VA Software, the VG Software and the PAVE Software;*
>
> (c)    *any agreement between the Parties*;
>
> (d)    *any other matter between the Parties; and/or*
>
> (e)    *any claims under federal, state, or local law, rule, or regulation*.

AC, Ex. A at § 3 (emphasis added). This "all encompassing release" is part of an overall settlement agreement between sophisticated commercial parties (who were represented by counsel of their own choosing) which governs the termination of a business relationship between the parties, including Dinsmore's withdrawal as a member of VeyeZER, the distribution of certain software and related intellectual property assets, and the terms governing the breakup of the business relationship between Spheregen Tech and VeyeZER. The terms of the Settlement and Release are well-defined, not susceptible to different meanings and must be enforced. *See Bihag v. A&E Television Networks, LLC*, 669 Fed. Appx. 17, 18 (2d Cir. 2016) (The language of the release, which covers "'any and all claims arising out of [Plaintiff's] 'appearance or participation in the Program[,]' ... is clear, broad, and dispositive," and therefore bars Plaintiffs claims).

Notwithstanding this clear and unambiguous language, VeyeZER now tries to rewrite the agreement, arguing that Spheregen has "continued to use the Mark[8] as part of the VG Software name, without authorization from VeyeZER," AC, at ¶ 50, and that "[t]he settlement agreement. . . did not provide for the transfer of any of VeyeZER's non-patented intellectual property, including trademarks and copyrights, to the defendants." *Id*. at ¶ 49. This argument is belied by the plain language of the Settlement Agreement with Mutual Releases. First, the name of the VG Software was in existence when "VeyeZER and the VeyeZER Parties hereby assign[ed] and transfer[ed] to Spheregen *all of their respective tight, title, and interest to the VG Software*." *Id*. § 1(a)(ii). In fact, the Settlement Agreement with Mutual Releases defined the VG Software as: "the software known as **VeyeZER Graph**, an assessment tool which uses the study of eye movements to provide insight on the underlying causes of reading impairment (the "VG Software")…." AC, Ex. A (emphasis added). There was no limitation on the scope of this assignment or prohibition for the use of the software name. Nor did the Plaintiffs carveout VeyeZER Graph from the Release.

Second, Section 1 (which is entitled: "Settlement Transactions") lists five separate and distinct settlement transactions: (1) Software Transfers; (2) Patent Assignment and License; (3) Outstanding Attorneys' Fees; (4) Payment to C. Andrews and J. Andrews; and (5) Withdrawal of VeyeZER Membership. AC, Ex. A § 1(a)-(e). The Software Transfer section is separate from the Patent Assignment section. Thus, Plaintiffs' allegation that "the settlement agreement…did not provide for the transfer of any of VeyeZER'S non-patentable intellectual property, including trademarks and copyrights," overlooks the fact that the Plaintiffs did not place any limitation on the transfer of **<u>all</u>** "right, title, and interest" to the VG Software to Spheregen. It also ignores the Release.

---

[8] The Amended Complaint defines "Mark" as "VeyeZER." AC, at ¶ 44.

Plaintiffs could have (but did not) carve out trademark claims (or other claims) in Section 3 of the Settlement Agreement with Mutual Releases when it released all future claims arising from, *inter alia*, "any other matter between the Parties and/or any claims under federal, state or local law…."). *Id*. § 3; *see also Watkins v. Watkins*, 152 Conn. App. 99, 108 (2014) (upholding settlement agreement observing that plaintiff "could have expressly reserved" a claim from the settlement"). Given the comprehensive nature of the Settlement Agreement with Mutual Releases, the Plaintiffs cannot complain about the Defendants' alleged "use" of the word Veyezer Graph as it was in existence when the Plaintiffs assigned all of "their right, title and interest" in Veyezer Graph to Spheregen as part of the Settlement Agreement with Mutual Releases. This Court should not permit the Plaintiffs to unilaterally change the terms of this comprehensive settlement. *Tallmadge Brothers*, 252 Conn. at 506 ("It is not within [the court's] power to make a new and different agreement.").

The purported copyright claim (Count 4) is equally barred by the comprehensive Settlement Agreement with Mutual Releases. The "VeyeZER Prototype" and "VeyeZER Graph" Videos are instructional videos for the VeyeZER Graph Software that were in existence when the Settlement Agreement with Mutual Releases was executed. Plaintiffs did not exclude these items from the agreement. They are therefore covered by the provisions of the Settlement Agreement with Mutual Releases for the same reasons discussed above.

In summary, the purported trademark and copyright claims should be dismissed because they are barred by the comprehensive Settlement Agreement with Mutual Releases. *Tallmadge*, 252 Conn. at 506. ("To put it succinctly, settlement agreements will not serve their purpose of putting opposing claims to rest if, despite a fairly negotiated comprehensive and unambiguous merger clause, they remain subject to judicial revision.").

## 2.  The Settlement Agreement with Mutual Release Bars Plaintiffs' Purported Claims of Fraud (Count 5) and Unjust Enrichment (Count 6)

The state law claims alleging "fraud and fraudulent concealment" (Count 5) and "unjust enrichment and constructive trust" (Count 6) should also be dismissed because they are barred by the Settlement with Mutual Releases, which has clear and unambiguous language that releases all claims, whether "known or unknown," "***whether or not apparent or yet to be discovered***," "***for any acts or omissions***" related to or arising from…the "ownership, management and operations of VeyeZER"…. and (d) any other matter between the Parties…." AC, Ex. A. § 3 (emphasis added).

A release may cover unknown claims, including unknown fraud claims. *Centro Empresarial Cempresa S.A.,* 17 N.Y.3d, 269 277 (2011) (holding that  a release can "encompass unknown fraud claims" where the release included "all manner of actions. . . arising under or in connection with the Agreement Among Members and/or arising out of. . .the ownership of membership interest in defendant"); *NovaFund Advisors, LLC v. Capitala Group, LLC*, No. 3:18cv1023(MPS), 2020 WL 230089, at *9 (D. Conn. Jan. 14, 2020) (applying *Centro*). "Whether the parties intended to release such claims "must be determined from the language in the" release. *Gamble v. Tyson*, No. 17 Civ. 6635 (LAK) (SN), 2019 WL 5722129, at *8 (S.D.N.Y. Jan. 4, 2019). The recent *NovaFund* decision is instructive.

In *NovaFund*, the court recognized that fraud claims can be released but held that the release in question was narrower than the release in *Centro* because it was limited to services provided by one party to another. *Id*. at *9. Here, by contrast., the language of the mutual release includes "**all known and unknown charges, complaints, claims**, . . .  **of any nature whatsoever, known or unknown,** which either Party has, or may have  had,  against  the  other  Party, **whether or not apparent or yet to be discovered, or which  may  hereafter  develop, for any acts or omissions related to or arising from**. . .the "ownership, management and operations of VeyeZER.

17

. . . and (d) any other matter between the Parties…."  AC, Ex. A, § 3 (emphasis added). This language is well-defined and not susceptible to different meanings. It not only includes known and unknown claims, but also claims arising from omissions, such as Plaintiffs' factual allegations that (1) Dinsmore allegedly made two transfers of funds from VeyeZER to Spheregen in June 2022, (2) allegedly promised in August 2022 to transfer grant funds to Spheregen and (3) allegedly "fraudulently concealed" these transactions by "failing to file a treasurer's report despite this report being requested on several occasions."[9] AC ¶¶ 87-90. Each of these alleged events happened more than a year before the Settlement Agreement with Mutual Releases was entered into and therefore is covered by the release. Moreover, the allegations of the complaint suggest that Plaintiffs had knowledge of the alleged status of the treasurer's reports and the alleged statement about the grant funds. If Plaintiffs did not intend to release all known and unknown claims, they could have expressly reserved such a claim from the settlement. They were represented by counsel[10] and did not carve out any such claims.

The broad scope of this Release is further strengthened by the surrounding sections of the Agreement, which were negotiated by sophisticated parties and their counsel:

- The Settlement Agreement With Mutual Releases "is in full **settlement of all claims or losses of whatsoever kind** or character that they have, or may ever have had, **against the other Parties, as broadly described in Section 3** above." *Id.* at § 5 (emphasis added).

- Even if there is "the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true," the Agreement "shall be, and remain, in effect. . . ." *Id.* at § 11.

---

[9] Plaintiffs allege that they requested treasurer's reports and did not receive them. Therefore, Plaintiffs allege knowledge of the report, and further knowledge of its absence well before engaging in the settlement discussions that led to the Settlement Agreement with Mutual Releases.

10 AC, Ex. A, § 15 ("in entering into this Agreement the Parties acknowledge that they have relied upon the legal advice of their respective attorneys….").

- The Settlement Agreement with Mutual Releases "supersedes all prior negotiations and/or agreements." *Id.* at § 10.

These sections, when read together, make clear that the signatories intended to settle any and all claims, known or unknown, including "claims arising from omissions" (such as Plaintiffs' purported fraud allegations). AC, Ex. A, § 3.).

Here, the sweeping and broad language of the Release leaves no question as to its scope and applicability to Plaintiffs' claims alleging fraud and unjust enrichment. The Parties drafted the Settlement Agreement with Mutual Releases to be construed broadly and included a general release that did not carve out any exceptions. The language of the release is clear and unambiguous, and must be binding on both parties. *See Bihag v. A&E Television Networks, LLC*, 669 Fed.Appx. 17, 18 (2d Cir. 2016) (The language of the release, which covers "'any and all claims' arising out of [Plaintiff's] 'appearance or participation in the Program[,]' . . . is clear, broad, and dispositive," and therefore bars Plaintiffs claims.); *Tallmadge Bros., Inc.,* 252 Conn. 479, 506 (2000) ("To put it succinctly, settlement agreements will not serve their purpose of putting opposing claims to reset if, despite a fairly negotiated comprehensive and unambiguous merger clause, they remain subject to judicial revision."). As such, Counts 5 and 6 should be dismissed.

## B. The Trademark Claim (Count 3) Also Fails Because VeyeZER Has Not Alleged A Plausible Claim

VeyeZER, cannot satisfy three[11] of four the elements necessary to state a plausible trademark infringement claim.

In order to prevail on a trademark infringement claim for registered trademarks, pursuant to 15 U.S.C. § 1114 or unregistered trademarks pursuant to 15 U.S.C. § 1125(a)(1), a plaintiff must establish that (1) it has a valid mark that is entitled to protection the Lanham Act; and that (2) the defendant used the mark, (3) in

---

[11] Defendants reserve the right to challenge Plaintiffs' allegations concerning the validity of the mark.

commerce, (4) in connection with the sale or advertising of goods or services. . .
without the plaintiff's consent.

*1-800 Contacts, Inc v. WhenU.Com, Inc.*, 414 F. 3d 400, 406-407 (2d Cir. 2005) (internal
quotations and citations omitted).

First, as discussed above, VeyeZER cannot satisfy the "without consent" element because
it acquiesced to any foreseeable use of VeyeZER Graph when it entered into the Settlement
Agreement with Mutual Releases and assigned "**all right title and interest to the VG Software**"
[i.e., the Software known as VeyeZER Graph]" ***and* released all claims  arising from** "**any other
matter between the Parties; and/or any claims under federal, state or local law, rule or
regulation.**" AC, Ex. A at §§  1(a)(ii), 3(d), 3(e) (emphasis added). These provisions of the
Settlement Agreement with Mutual Releases completely bar this claim and must be considered on
a 12(b)(6) motion because "a complaint is also 'deemed to include any written instrument attached
to it as an exhibit, materials incorporated in it by reference, and documents that, although not
incorporated by reference, are integral to the complaint,'" *Cohen, P.C.*, 897 F.3d 75, 80 (2d Cir.
2018) (quoting *L-7 Designs, Inc.*, 647 F.3d 419, 422 (2d Cir. 2011)).

In an attempt to overcome these provisions, the Amended Complaint alleges that the
Settlement Agreement "did not provide the transfer of any of VeyeZER's non-patented intellectual
property, including trademarks and copyrights to the defendants." AC, at ¶ 49. This conclusory
allegation does not save the trademark claim because it does not address the above-cited provisions
of the Settlement Agreement with Mutual Releases, including the fact that they did not place any
limitation on the assignment to Spheregen of all "right, title, and interest" to the VG Software and
did not carve out trademark claims when it released all future claims arising from "any other matter
between the Parties and/or any claims under federal, state or local law…." Indeed, it cannot be
reasonably disputed that Plaintiffs abandoned the mark with respect to the VG Software when they

transferred "all right, title, and interest" to Defendants. *Alliant Energy Corp. v. Alltel Corp.*, S.D. Iowa, 344 F Supp. 2d 1176, 1186 (2004) (to make a ruling on abandonment under Lanham Act, two things must be found: (1) non-use; and (2) intent not to resume use). The Settlement Agreement with Mutual Releases conclusively establishes that VeyeZER is not using the VG Software and has no intent to resume use of the VG software.[12]

Second, even though VeyeZER directs the Third Count to "all defendants," it does not articulate how ***each*** particular defendant allegedly "used" the Mark "in commerce" or how there is a "likelihood" of confusion. This is fatal to the purported trademark claim because the Second Circuit "has explained that 'use,' 'in commerce,'[13] and 'likelihood [are] three distinct elements." *Lopez v. Bonanza.com, Inc.*, 17civ8493, 2019 WL 5199431, at *8 (S.D.N.Y. Sept. 30, 2019) (citing *1-800 Contacts, Inc. v. WhenU.com.,Inc.*, 414 F.3d 400, 412 (2d Cir. 2005)); *see also Rivera v. Doe*, No. 3:22-CV-0847 (SVN), 2023 WL 257730, at *2 (D. Conn. Jan. 18, 2023) (dismissing claim when plaintiff did "not allege with any specificity what each Defendant did or did not do. . . ."). "[T]he mere assertion of trademark infringement, without any factual allegations of the nature of the infringement, simply does not give Defendant fair notice [under F.R.C.P. 8] of the claims against them." *Lopez*, 2019 WL 5199431, at *12. Here, VeyeZER vaguely treats the defendants as a collective group and summarily alleges that the "defendants have continued to use the Mark as part of the VG Software name" and that "such use of the Mark on the defendants' VG software is confusingly similar to VeyeZER's Mark." AC, at ¶¶ 50-52. The Amended Complaint does not describe the actions of each defendant, explain how each defendant's alleged actions is somehow

---

[12] Moreover, discovery will show that Defendants rebranded the VG Software, additionally rendering moot any such purported claim.

[13] The "use in commerce" element applies equally to claims of trademark infringement or false designation of origin. Lopez, 2019 WL 5199431, at *7.

improper, or articulate the factual basis for the "likelihood of confusion" test. Such vague and conclusory allegations do not satisfy *Twombly's* plausibility standard and require dismissal of the claim. *See Ahmed v. GEO USA LLC*, No. 14-cv-7486(JMF), 2015 WL 1408895, at * (S.D.N.Y. Mar. 27, 2015) (dismissing purported trademark claim where plaintiff merely alleged that "Defendant's use of the mark is 'confusingly similar' to Plaintiff's mark and that Defendant is using the mark 'to divert customers and further mislead and deceive the customers of Plaintiff.'"). The trademark claim should be dismissed for this separate and independent reason.

### C.  The Copyright Infringement Claim (Count 4) Must Be Dismissed

Even if, assuming *arguendo* that the Court were to consider the purported copyright infringement claim notwithstanding the Settlement Agreement with Mutual Releases, it should be dismissed for the following separate and independent reasons: (1) The Amended Complaint is entirely devoid of any facts suggesting that the Plaintiffs have satisfied the mandatory prerequisites imposed by 17 U.S.C. § 411(b) for bringing a copyright infringement claim; (2) the Plaintiffs lack statutory standing to bring a copyright claim because conclusory allegations are insufficient to establish that VeyeZER legally owns or is the beneficial owner of the copyright(s) at issue; and (3) Plaintiffs have not specified the allegedly wrongful conduct supposedly undertaken by each defendant.

### 1.  Plaintiffs Have Not Satisfied the Copyright Act's Mandatory Prerequisite for a Claim

The Plaintiffs have not satisfied the threshold statutory requirement of holding a valid copyright registration. Section 411 of the Copyright Act commands: "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). The Supreme Court's recent decision in *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S.

178, 181 (2022), instructs that this requirement is a prerequisite to bringing a copyright claim. *Id*. ("a valid copyright registration" is a "prerequisite for bringing a 'a civil action for infringement' of copyrighted work.") (citing 17 U.S.C. § 411(a)); *see also Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) (observing that "registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing….").

A failure to meet this threshold requirement necessitates dismissal at the 12(b)(6) stage. *IBM Corp. v. Micro Focus (U.S.)*, 676 F. Supp. 3d 263, 274 (S.D.N.Y. 2023) (a plaintiff must show he 'either hold[s] a valid copyright registration or [has] applied and been refused a registration as prerequisite to' suing a defendant for infringing a copyright.'") (citing *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659, 663 (S.D.N.Y. 2017)); *see also Thomas v. Carter*, 581 F. Supp. 3d 651, 656 (S.D.N.Y. 2022) (dismissing copyright infringement claim where plaintiff "has not alleged that he obtained those registrations, nor that he followed the procedures specified for situations in which registration is refused."). Here, the dismissal of the purported copyright claim is required pursuant to this controlling authority because the Amended Complaint is entirely devoid of any allegations stating that Plaintiffs hold a valid copyright registration or has applied and been refused a registration.

2. **The Amended Complaint Does Not Set Forth Sufficient Facts to Meet the Beneficial Ownership Test**

The purported copyright claim should also be dismissed because VeyeZER has not satisfied the threshold requirement of establishing that it is a legal or beneficial owner under Section 501(b) of the Copyright Act.

Pursuant to Section to Section 501(b) of the Copyright Act, "*[t]he legal or beneficial owner of an exclusive right*[14] under a copyright is entitled, subject to the requirements of section 411[15], to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b) (emphasis added). "Under Section 501(b), the plaintiff must have a legal or beneficial interest in at least one of the exclusive rights described in Section 106." *Silvers v. Sony Pictures Entertainment, Inc*., 402 F.3d 881, 885 (9th Cir. 2005).  Here, because the Amended Complaint does not allege that VeyeZER is the legal owner, the only way VeyeZER can satisfy the requirements of Section 501(b) is to plead facts establishing that it is a beneficial owner. It has not done so.

"A beneficial owner is 'the original author who transfer[s] [an exclusive copyright] to another but. . . [is] entitled to receive royalties from that new owner for the exploitation of the author's work.'" *Kelly v. Universal Music Group*, No. 14civ2968(PAE), 2015 WL 6143737, at *4 (S.D.N.Y. Oct. 19, 2015)  (alterations original) (citing *Poindexter v. Cash Money Records*, No. 13cvi1155(RWS), 2014 WL 818955, at *5 (S.D.N.Y. Mar. 3, 2014)); *see also DRK Photo v. McGraw-Hill Global Education Holdings, LLC*, 870 F.3d 978 (9th Cir. 2017) ("Beneficial ownership arises by virtue of section 501(b) for the purposes of enabling an author or composer to protect his economic interest in a copyright that has been transferred.") (quoting *Music, Inc. v. Hirsch*, 104 F.3d 1163, 1166 (9th Cir. 1997). Here, the Amended Complaint contains the conclusory allegations that "VeyeZER created certain videos titled 'VeyeZER Prototype' and 'VeyeZER Graph' (the 'Videos') to advertise "its software products on YouTube," and "VeyeZER is the beneficiary copyright owner of the Videos."  AC, at ¶¶ 60-61. This is a legal conclusion

---

[14] Section 106 of the Copyright Act lists exclusive rights. 17 U.S.C. § 106.

15 As discussed above, the Plaintiffs have not satisfied the threshold requirements of Section 411.

which is not entitled to any weight because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not state a plausible claim. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alteration in original) (quoting *Iqbal*, 556 U.S. 687). The Amended Complaint does not include any facts establishing how VeyeZER acquired a beneficial ownership or addressing which, if any, exclusive rights VeyeZER allegedly has a beneficial interest in. *Kelly*, 2015 WL 6143737, at *4 (granting motion to dismiss where the complaint "does not allege that, let alone explain by what means, plaintiffs retained a beneficial interest in that copyright."). As such, VeyeZER has not satisfied the pleading requirements necessary to state a claim.

### 3.  The Copyright Claim Improperly Lumps the Corporate Defendants Together and Fails to Satisfy Rule 8

Count Four is brought by VeyeZER against defendants Holding and Spheregen Tech. As pleaded, Count Four is not plausible because it does not specify the wrongful conduct allegedly undertaken by *each* defendant or when each defendant allegedly took those actions. *Cianelli v. Nourison Indus.*, No. 3:19cv19147, 2020 WL 4882500, at *3 (D. N.J. Aug. 20, 2020) ("To state a claim for copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) that a defendant copied the constituent, original elements of the work.").

Count Four is entirely premised upon the conclusory allegation: "Since the settlement agreement, the defendants have continued to use the Videos on their YouTube site." AC, at ¶ 67. This allegation is too vague to establish a plausible copyright infringement claim because it improperly treats two distinct defendants as a single collective and does not specify the particular acts or times *each* Defendant allegedly took wrongful actions. *Perfvwaybelayouix v. Graham-Drake*, No. CV 22-1019 (CKK), 2022 WL 17357231, at *9 (D.D.C. Dec. 1, 2022) ("Plaintiff fails to plead factual allegations regarding how *each* named Defendant was specifically involved in infringing…for this reason, the Court finds that Plaintiff fails to satisfy the pleading requirements

established by FRCP 8. . . .") (emphasis added), *aff'd*, No. 22-7169, 2023 WL 4991334 (D.C. Cir. Aug. 4, 2023); *Cianelli v. Nourison Indus.*, No. 3:19cv19147, 2020 WL 4882500, at *7 (D. N.J. Aug. 20, 2020) (dismissing copyright infringement claim when Plaintiff failed to allege how *each* Defendant accessed the allegedly protected work and when "Plaintiff failed to plead facts showing when Defendant committed the alleged infringing acts..."); *see also Rivera v. Doe*, No. 3:22-CV-0847 (SVN), 2023 WL 257730, at *2 (D. Conn. Jan. 18, 2023) (dismissing claim when plaintiff did "not allege with any specificity what each Defendant did or did not do. . . ."). Thus, the vague and conclusory nature of the allegations in Count 4 do not state a plausible claim and necessitate dismissal under Rules 8 and 12(b)(6).

### D.  The Purported State Law Tort Claims (Counts 5 and 6) Should Also Be Dismissed for the Separate Reasons of Lack of Standing and Failure to State a Claim Under FRCP 12(b)(6) and 12(b)(9)

#### 1.  As a threshold matter, Padula and C. Andrews lack Article III Standing to bring Counts 5 and 6 because those purported claims belong to the LLC

The individual plaintiffs - - Padula and C. Andrews - - lack standing to assert claims for alleged harm to VeyeZER because they have not alleged any individualized harm that is separate and apart from the injury allegedly suffered by the LLC and the Connecticut Supreme Court's decision in *Saunders v. Briner*, 334 Conn. 135, 167 (2019), reaffirmed the rule that members of an LLC lack standing to bring derivative actions.

"'[A] plaintiff must demonstrate standing for each claim' and form of relief sought." *Cacchillo v. Insmed, Inc.,* 638 F.3d 401, 404 (2d Cir. 2011). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and a likelihood that the injury 'will be redressed by a favorable decision.'" *Martin v. United Bridge Capital, LP*, 3:20cv0081, 2021 WL 6499474, at *2 (D. Conn. June. 1, 2021) (citing *Susan B. Anthony List, v. Driehaus*, 573 U.S., 149, 157-158  (2014)). An

individual member of a LLC lacks Article III standing to bring a claim when it is the LLC rather than the individual who has suffered the alleged injury to be redressed by the lawsuit. *Martin*, 2021 WL 6499474, at *2-3 (dismissing purported claim brought by member of LLC); *Galloway v. Ahamed*, No. 3:22cv979(CSH), 2022 WL 310733, at *2 (D. Conn. Aug. 4, 2022) (holding that plaintiff lacks standing to bring claim because "members of limited liability companies lack standing to bring derivative actions") (citing *Saunders*, 334 Conn. at 167).

In *Saunders v. Briner*, 334 Conn. 167 (2019), the Connecticut Supreme Court reaffirmed the general rule that members of an LLC lack standing to bring derivative actions under Connecticut common law and announced a narrow exception for an LLC with a single member. *Id*. at 167 (in the "unique circumstance ….in which the *sole* member of a limited liability company seeks to remedy a harm suffered by it.").  Here, the "narrowly tailored exception" under *Saunders* does not apply because VeyeZER is not a single member LLC. *See* AC, at ¶ 99 ("listing VeyeZER's multiple members).

Moreover, even if the *Saunders* exception applied (which it does not), the individual Plaintiffs (Padula and C. Andrews) still cannot satisfy their burden to establish Article III standing. *Martin,* 2021 WL 6499474 at *3-4 (holding that the *Saunders* exception "is of no moment because Article III standing requires that the injury. . . be particularized to the individuals who sue….[and plaintiff] must still demonstrate that he has suffered a particularized injury that would be redressed…within the meaning of Article III.") (citations omitted). Here, Padula and C. Andrews have not (and cannot) show an individualized harm because the allegations of Count 5 (fraud) and Count 6 (unjust enrichment) make clear that these claims arise from the alleged harm suffered by the LLC. *See*  AC, Count 5, ¶ 91 (alleging "Dinsmore appropriated to himself, Spheregen Holding and/or Spheregen Tech, *the funds of VeyeZER*") (emphasis added); AC, Count 6, ¶ ¶  109-111

(alleging "Spheregen Holding and/or Spheregen Tech received a monetary benefit….and did not pay or otherwise fully compensate VeyeZER for the value of the benefit…*VeyeZER was damaged* as a result of the failure by Spheregen Holding and/or Spheregen Tech to pay or otherwise fully compensate VeyeZER….") (emphasis added). These purported claims of Padula and C. Andrews should be dismissed with prejudice for lack of subject matter jurisdiction because the purported injury alleged in Counts 5 and 6 runs to the LLC, not the individual plaintiffs.

### 2. Plaintiffs Fail to Adequately Plead "Fraud or Fraudulent Concealment" or "Unjust Enrichment and Constructive Trust" under FRCP 9(b)

Plaintiffs' purported claims of "fraud or fraudulent concealment" and "unjust enrichment and constructive trust" both sound in fraud and are therefore subject to Rule 9(b)'s more stringent pleading standards. *Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 573 F. Supp. 3d 671, 683 n. 7 (D. Conn. 2021) ("if the allegations in the Complaint are 'predicated on fraud', 'sound in fraud', or 'rely upon averments of fraud', they are subject to Rule 9(b)'s requirements.'") (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).[16] "[A] fraudulent concealment claim turns on the state of mind of the defendants and must be proved by 'clear, precise, and unequivocal evidence.'" *Adcock v. Remington Arms Co*., No. CIV. B-89-345 (WWE), 1992 WL 363502, at *3 (D. Conn. Sept. 15, 1992) (quoting *Alaimo v. Royer*, 188 Conn. 36, 39 (1982).

Plaintiffs' amendments[17] to the complaint to now allege "fraud" do not save these counts from the Release, as discussed above, nor do they satisfy FRCP 9(b)'s heightened pleading standard:

---

16 In Biohealth Laboratories, Inc., the court also applied Rule 9(b)'s heightened pleading standard to the unjust enrichment claim. 573 F. Supp. 3d 671, 683 n. 7. Thus, Plaintiffs' unjust enrichment claim should also be dismissed because they couple with this claim with the same conclusory fraud allegations, which do not meet FRCP 9(b)'s heighted pleading standard.

17 Plaintiffs' original complaint did not allege fraud.

> Fraud involves deception practiced in order to induce another to act to her detriment, and which causes that detrimental action. ... The four essential elements of fraud are (1) that a false representation of fact was made; (2) that the party making the representation knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment. . . . Because specific acts must be pleaded, the mere allegation that a fraud has been perpetrated is insufficient. All of these ingredients must be found to exist; and the absence of any one of them is fatal to recovery.

*Wells Fargo Bank, N. A. v. White*, No. FST CV 13-6019128 S, 2023 WL 5199094, at *4 (Conn. Super. Ct. July 28, 2023) (quoting *Asnat Realty, LLC, United illuminating Company, et al.*, 204 Conn. App. 313, 321 (2021)). The mere use of the word "fraud" fails to satisfy the necessity of pleading "specific acts" of fraud. *Id.*

Plaintiffs identify no statements by Defendants that were false, much less that could have deceived a reasonable business person in Plaintiffs' position. And Plaintiffs' allegations fall far short of the "who, what, when, where, and how" required to plead a claim, like this one, subject to Rule 9(b)'s pleading standards, or even the plausibility standard required by *Iqbal* for claims subject to Rule 8. Instead, Plaintiffs add the word "fraudulently" before the word transferred and claim the only indicator of this fraud was ambiguous requests for a treasurer's report. AC, at ¶¶ 90, 108. The Amended Complaint does not allege when these requests were made, how often, in what form, and further fails to clarify the relation to the Release. Specifically, the Amended Complaint fails to allege how requests for these "treasurer reports" were made, when they were made, in what form.

Plaintiffs' allegations are rendered even more implausible by the parties' heavily negotiated contractual relationship. To the extent Plaintiffs were worried about the treasurer's report or its absence, as they imply, the Amended Complaint is devoid of any allegations of fraud or deceit in the drafting or signing of the Settlement Agreement with Mutual Releases. Moreover, the Amended Complaint makes explicit Plaintiff Padula's knowledge of these transfers or failures to transfer and

fails explain how such explicit knowledge justifies allegations of "concealment." AC, at ¶¶ 89, 107.

There is no carve-out from the release to protect against any such suspicion, nor was a treasurer's report required as a pre-condition to the signing of the Settlement Agreement with Mutual Releases, which the Plaintiffs could have required. Instead, the Amended Complaint only alleges fraud in the most general manner, inserting the word "fraudulently" before the word transfer, and alleging that the failure to file a treasurer's report somehow concealed these transfers without alleging what other attempts were made to discuss these transfers. No reasonable person could plead ignorance to such alleged concealment, particularly where the Amended Complaint pleads actual knowledge.

### 3. The Plaintiffs Fail to Plead a Plausible Claim of "Unjust Enrichment or Constructive Trust"

Even if the Plaintiffs did not release their claims against Defendants, which they did, the Court should still dismiss Count 6, which alleges "unjust enrichment and constructive trust."

First, to the extent that Count 6 purports to assert a substantive cause of action for "constructive trust" against all defendants, that claim should be dismissed because, "[u]nder Connecticut law, 'a constructive trust is a remedy, not an independent substantive cause of action.'" *Universitas Educ., LLC v. Benistar*, No.3:20cv00738, 2021 WL 965794, at *6 (D. Conn. Mar. 15, 2021); *see also Carney v. Lopez*, 933 F. Supp.2d 365, 384 (2013) (same). Indeed, Connecticut's High Court has declared that purported constructive trust counts "request remedies" "rather than being substantive causes of action upon which the complaint is predicated." *Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 623 n. 3 (2002); *see also Universitas*, 2021 WL 965794, at *7 (granting motion to dismiss constructive trust claim because it "is not a substantive independent

cause of action"). As such, dismissal of the purported constructive trust claim against each of the defendants is warranted.

Second, to the extent that Count 6 purports to allege unjust enrichment "against all defendants," that claim must also be dismissed as it related to Dismore because it does not allege that he[18] "received a benefit." *See Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 433, 452 (2009) ("A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.").

### E.  The Conversion Claim Was Abandoned Because It Was Not Re-Alleged in the Amended Complaint

Count Five of the Plaintiffs' original complaint purported to allege a conversion claim by VeyeZER and C. Andrews against "against Dinsmore." (ECF # 1-1). The Amended Complaint, by contrast, did not re-allege a purported conversion claim. This Court should deem any purported conversion claim as abandoned and dismiss it with prejudice. *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."); *Radin v. Tun*, No. 12cv1393(ARR)(VMS), 2015 WL 4645255, at *23 (E.D.N.Y. Aug. 4, 2015) ("A party may voluntarily drop claims by choosing not to include them in a proposed amended pleading" and

---

[18] Count 6 alleges that "Spheregen Holding and/or SphereGen Tech received a monetary benefit…"

"[i]n such a circumstance, it is appropriate for the Court to dismiss the abandoned claims with prejudice.") (citations omitted).

### F. Plaintiffs Should Not Be Afforded Leave to Replead

This Court should exercise its discretion to deny Plaintiffs leave to have yet another bite at the apple by amending the deficiencies in their already *amended* complaint. *Yout, LLC v. Recording Indus. Assoc. of Am., Inc.*, 633 F. Supp. 3d 650, 680 (D. Conn. 2022) (concluding that dismissal with prejudice was warranted and observing that "[a]lthough Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend.") (citations omitted); *Maguire v. Ameriprise Fin. Servs., LLC*, No. 3:22cv0128(VAB), 2022 WL 1718038, at *12 (D. Conn. May 27, 2022) (denying leave to replead when "plaintiff, who is represented by counsel, has already filed an Amended Complaint," and declaring that "[w]here there is no indication. . . that pleading additional facts would resuscitate a claim that has been dismissed, the Court need not grant leave to amend."); *Mario Badescu Skin Care, Inc. v. Sentinel Ins. Co., Ltd.*, No. 22-0380-CV, 2023 WL 6567266, at *3 (2d Cir. Oct. 10, 2023) ("leave to amend is futile if the proposed amendment 'could not withstand a motion to dismiss'") (citing *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164-65 (2d Cir. 2015)).

Here, the dismissal should be with prejudice because (1) Plaintiffs already took a "second bite of the apple" by filing an Amended Complaint; (2) the Release is a complete bar to Counts 3, 4, 5, and 6, rendering futile any proposed amendment of this claims; (3) Plaintiffs are represented by counsel and cannot overcome the other above-mentioned 12(b)(6) deficiencies; and (4) the individual Plaintiffs' lack of standing to bring Counts 5 and 6 under Rule 12(b)(1).

## VI.    <u>CONCLUSION</u>

For the reasons discussed above, Defendants respectfully requests that the Court enter an order dismissing Counts 3, 4, 5, and 6 of the Amended Complaint with prejudice. Similarly, the Court should dismiss with prejudice any purported conversion claim because although Count Five of the Plaintiffs' original complaint alleged a purported conversion claim the Amended Complaint did <u>not</u> include a purported conversion claim.

Respectfully submitted,

**TED DINSMORE, SPHEREGEN HOLDING, LLC AND SPHEREGEN TECHNOLOGIES, LLC**

By:    */s/ Kristen L. Zaehringer*
Kristen L. Zaehringer (ct27044)
HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC
135 Broad Street
Milford, CT  06460
Tel: (203) 877-8000/Fax: (203) 878-9800
Juris No. 026616
Kzaehringer@hssklaw.com

*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on July 15, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to all parties that are unable to accept electronic filing. Parties may access this filing through the Court's electronic system.

*/s/ Kristen L. Zaehringer*
Kristen L. Zaehringer