## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

WILLIAM PADULA, CRAIG ANDREWS,
and VeyeZER LLC,
    *Plaintiffs*,

    v.

TED DINSMORE, SPHEREGEN
HOLDING, LLC and SPHEREGEN
TECHNOLOGIES, LLC,
    *Defendants.*

No. 3:24-cv-913 (VAB)

## RULING AND ORDER ON MOTION TO DISMISS AND PRELIMINARY INJUNCTION

William Padula ("Mr. Padula"), Craig Andrews ("Mr. Andrews"), and VeyeZER, LLC ("VeyeZER") (collectively the "Plaintiffs") have sued Ted Dinsmore ("Mr. Dinsmore"), SphereGen Holding, LLC ("SphereGen Holding"), and SphereGen Technologies, LLC ("SphereGen Tech") (collectively the "Defendants") for claims of (1) breach of contract brought by VeyeZER against Mr. Dinsmore and Technologies, (2) breach of contract and breach of the implied covenant of good faith and fair dealing brought by Mr. Padula and Mr. Andrews against Mr. Dinsmore and Technologies, (3) federal trademark infringement brought by VeyeZER against the Defendants, (4) copyright infringement brought by VeyeZER against Holding and Technologies, (5) fraud and fraudulent concealment brought by the Plaintiffs against Mr. Dinsmore, and (6) unjust enrichment and constructive trust brought by VeyeZER and Mr. Andrews against the Defendants. Amd. Compl., ECF No. 17 at 1–20 (June 8, 2024) ("Amd. Compl.").

VeyeZER has filed a motion for a preliminary injunction to stop the Defendants from infringing of the trademark: "VEYEZER". Mot. for Preliminary Injunction, ECF No. 19 (June 10, 2024) ("Mot. Prelim. Inj.").

The Defendants have filed a motion to dismiss with prejudice four of the Plaintiffs' six claims, the federal trademark infringement claim, the copyright infringement claim, the fraud and fraudulent concealment claim, and the unjust enrichment and constructive trust claim, Counts 3, 4, 5, and 6 of the Plaintiffs' Amended Complaint respectively. Mot. to Dismiss, ECF No. 22-1 (July 15, 2024) ("Mot.").

For the following reasons, the Defendants' motion to dismiss is **GRANTED**, any federal trademark infringement and copyright claims within Counts 3 and 4 of the Amended Complaint are **DISMISSED with prejudice,** and VeyeZER's motion for preliminary injunction is **DENIED**.

All of the remaining state law claims will be dismissed without prejudice, and remanded back to the Superior Court for the State of Connecticut, Judicial District of New Haven, although any such remand will await further adjudication, to the extent that the Plaintiffs seek to file a motion for leave to file a Second Amended Complaint with a claim under Connecticut law, not preempted by the Federal Copyright Act, by **April 18, 2025**.

If, after the Court's review of such a proposed claim, a viable claim under Connecticut law exists that is not preempted by the Copyright Act, all state law claims, including any new state law claim, will be remanded back to the Superior Court for the State of Connecticut, Judicial District of New Haven.

If a motion for leave to file a Second Amended Complaint with a viable, non-preempted claim under Connecticut law is not filed by **April 18, 2025,** then the Court will issue an order

dismissing all state law claims without prejudice and remanding the case back to the Superior Court for the State of Connecticut, Judicial District of New Haven.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations[1]

Organized around February 7, 2018, VeyeZER, LLC is a Connecticut limited liability company. Amd. Compl. ¶ 1, allegedly created for the purpose of developing and expanding various medical vision technologies, including software known as VeyeZER: Visual Assessment (the "VA Software"), VeyeZERGraph (the "VG Software"), and PAVE (the "PAVE Software"). *Id.* ¶ 5. VeyeZER has allegedly advertised, promoted, and marketed its software using the Registered Trademark "VEYEZER," (the "Mark"), which was trademarked and registered in the U S Patent and Trademark office on February 28, 2023. *Id.* ¶ 44.

Under Paragraph 11(3) of VeyeZER's Operating Agreement, VeyeZER was to be "managed exclusively by all of its members." *Id.* ¶ 101. For the time period relevant for this lawsuit, William Padula, Ted Dinsmore, Craig Andrews, and Judy Andrews were all managing members of VeyeZER. *Id.* ¶ 99. Padula and Dinsmore are both Connecticut residents, *id.* ¶¶ 2, 19, and Andrews is a Tennessee resident. *Id.* ¶ 20.[2]

Until September 19, 2023, Mr. Dinsmore served as the Treasurer of VeyeZER. *Id.* ¶¶ 84, 102. During this same time period, Mr. Dinsmore also served as a member and principal of SphereGen Holding, a Connecticut limited liability company organized on or about October 26, 2017, *id.* ¶ 40, and SphereGen Tech, *id.* ¶ 100, a Connecticut limited liability company organized

---

[1] For purposes of this motion to dismiss, the Court considers the factual allegations from the Amended Complaint to be true.
[2] The residency of Judy Andrews, a non-party to this lawsuit, is not relevant and therefore her residency is not mentioned in either the Amended Complaint or this Ruling and Order.

on or about December 24, 2014. *Id.* ¶ 3. Mr. Dinsmore served as SphereGen Technologies'

registered agent. *Id.* ¶ 3.

VeyeZER allegedly created certain videos titled "VeyeZER Prototype" and

"VeyeZERGraph" (the "Videos") to advertise its software products on YouTube, *id.* ¶ 60, and

allegedly is the beneficial copyright owner of the Videos. *Id.* ¶ 61. SpehereGen Tech allegedly

performed various software development services on the VA Software, VG Software and PAVE

Software. *Id.* ¶ 6.

Effective September 19, 2023, VeyeZER and SphereGen Tech allegedly entered into a

confidential settlement agreement and release (the "settlement agreement") with an effective date

of September 19, 2023. *Id.* ¶ 7. The settlement agreement allegedly provided that

"contemporaneously with the execution and delivery" of the settlement agreement, Mr. Dinsmore

would be deemed to have withdrawn from VeyeZER, LLC and would no longer have a

membership interest. *Id.* ¶ 8. It further allegedly provided that "SphereGen hereby assigns and

transfers to VeyeZER all of its right, title and interest to the VA Software. SphereGen will

transfer the existing VA Software, including any and all documentation, to VeyeZER according

to the terms and schedule set forth on exhibit A, attached hereto (the 'software transfer

schedule')." *Id.* ¶ 9.

The settlement agreement, a document allegedly drafted by Dinsmore, allegedly did not

provide for the transfer of any of VeyeZER's non-patented intellectual property, including

trademarks and copyrights, to the defendants. *Id.* ¶ 49. Nevertheless, the Defendants have

allegedly continued to use the Mark as part of the VG Software name, without authorization

from VeyeZER. *Id.* ¶ 50. According to the Plaintiffs, their alleged use of the Mark is likely to

cause confusion, deception, and mistake by creating the false and misleading impression that

defendants' software is manufactured or distributed by VeyeZER, or is associated or connected with VeyeZER, or has the sponsorship, endorsement, or approval of VeyeZER. *Id.* ¶ 51.

This alleged use of the Mark on defendants' VG software is alleged to be confusingly similar to VeyeZER's Mark. According to the Plaintiffs, the Defendants' alleged activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and additionally, injury to VeyeZER's goodwill and reputation as symbolized by the Mark, for which VeyeZER allegedly has no adequate remedy at law. *Id.* ¶ 52. The Defendants' actions allegedly demonstrate an intent to trade on the goodwill associated with VeyeZER's Mark to VeyeZER's harm. *Id.* ¶ 53. Defendants have allegedly caused and are likely to continue causing substantial injury to VeyeZER. *Id.* ¶ 54.

According to the Plaintiffs, the Defendants also allegedly have continued to use the Videos on their YouTube site, *id.* ¶ 67, and therefore infringe on VeyeZER's copyright interests. *Id.* ¶ 68. VeyeZER claims not to have authorized this use by the Defendants. *Id.* ¶ 69. As a result of this alleged infringement, VeyeZER has allegedly sustained and will continue to sustain substantial injury, loss and damage to its ownership rights in the copyrighted work. *Id.* ¶ 70. VeyeZER also claims irreparable harm. *Id.* ¶ 71.

The Defendants allegedly harmed the Plaintiffs in another way: through Mr. Dinsmore's alleged actions, while serving as VeyeZER's Treasurer. On three occasions, he allegedly either transferred VeyeZER funds without authorization, or failed to transfer VeyeZER specifically as he was directed. On the first occasion, in June 2022, Mr. Dinsmore allegedly fraudulently transferred two hundred thousand dollars from VeyeZER to SphereGen Tech and/or SphereGen Holdings without authority from VeyeZER's managing members. These funds allegedly consisted of funds invested by Mr. Andrews into VeyeZER. *Id.* ¶ 87. On the second occasion,

also in June 2022, Dinsmore allegedly fraudulently transferred sixty thousand dollars from VeyeZER to SphereGen Tech and/or SphereGen Holdings without authority from VeyeZER's managing members. These funds allegedly consisted of a grant or investment from the Barbara Bush Foundation into VeyeZER. *Id.* ¶ 88. Finally, around August 5, 2022, Dinsmore allegedly represented to Mr. Padula that he would transfer fifty thousand dollars from the Barbara Bush Foundation to VeyeZER, but failed to do so. *Id.* ¶ 89.

As VeyeZER's Treasurer, while Mr. Dinsmore allegedly had access to VeyeZER's accounts, he allegedly had no authority to make financial decisions on VeyeZER's behalf, to unilaterally enter into contracts on VeyeZER's behalf, or to transfer VeyeZER's assets without obtaining the consent and approval of a majority of the managing members. *Id.* ¶ 85.

Because Mr. Dinsmore allegedly did not own a fifty percent or greater membership interest in VeyeZER, the approval of the other managing members, Mr. Padula, Mr. Andrews, and/or Ms. Andrews allegedly had to be obtained before Mr. Dinsmore could transfer any assets of the company to himself or to a third party. *Id.* ¶ 86. But Mr. Dinsmore allegedly made no formal or informal request to the managing members of VeyeZER to approve the transfer. And Dinsmore allegedly fraudulently concealed the above fraudulent conduct by purposely failing to file a treasurer's report, despite Mr. Padula allegedly having requested such a report on several occasions. *Id.* ¶ 90.

Mr. Dinsmore allegedly appropriated to himself, SphereGen Holding and/or SphereGen Tech, the funds of VeyeZER, funds allegedly in his care or custody in his capacity as Treasurer of VeyeZER. *Id.* ¶ 91. SphereGen Holding and/or SphereGen Tech allegedly received a monetary benefit as a result of Dinsmore's alleged wrongful actions. *Id.* ¶ 109. SphereGen Holding and/or SphereGen Tech allegedly did not pay or otherwise fully compensate VeyeZER

for the value of the benefit. *Id.* ¶ 110. VeyeZER allegedly was damaged as a result of the failure

by SphereGen Holding and/or SphereGen Tech to pay or otherwise fully compensate VeyeZER

for the value of the 260,000 in funds wrongfully transferred by Mr. Dinsmore. *Id.* ¶ 111.

VeyeZER also seeks an order imposing a constructive trust over the funds fraudulently and

wrongfully transferred by Mr. Dinsmore from VeyeZER to himself, SphereGen Holding and/or

SphereGen Tech. *Id.* ¶ 112.

### B. Procedural History

On April 22, 2024, the Plaintiffs filed a pre-suit Application for a Temporary Injunction,

Unsigned Order for Hearing and Notice, and Proposed Complaint in the Superior Court for the

State of Connecticut, Judicial District of New Haven at New Haven. *See* Notice of Removal,

ECF No. 1-1 (May 22, 2024).

On May 22, 2024, the Defendants filed their notice of removal from the Superior Court

for the State of Connecticut, Judicial District of New Haven at New Haven, to the United States

District Court for the District of Connecticut. Notice of Removal, ECF No. 1.

On June 8, 2024, the Plaintiffs filed their Amended Complaint. Amd. Compl.

On June 10, 2024, VeyeZER filed its motion for a preliminary injunction. Mot. Prelim.

Inj.

On July 15, 2024, the Defendants filed their motion to dismiss the Plaintiffs' Amended

Complaint. Mot.

On that same day, the Defendants filed their opposition to VeyeZER's motion for a

preliminary injunction. Opp'n to Mot. for Preliminary Injunction, ECF No. 23 (July 15, 2024)

("Opp'n to Mot. Prelim. Inj.").

On August 23, 2024, the Plaintiffs filed their opposition to the Defendants' motion to dismiss the Plaintiffs' Amended Complaint. Mem. in Opp'n to Mot. to Dismiss, ECF No. 32 ("Opp'n").

On that same day, VeyeZER filed their reply to the Defendants' opposition to VeyeZER's motion for a preliminary injunction. Mem. in Support of Mot. for Preliminary Injunction, ECF No. 33 (August 23, 2024) ("Reply. to Mot. Prelim. Inj.").

On September 27, 2024, the Defendants filed their reply to the Plaintiffs' opposition to the Defendants' motion to dismiss the Plaintiffs' Amended Complaint. Reply to Resp. to Mot. to Dismiss, ECF No. 36 ("Reply").

On October 11, 2024, the Defendants filed their sur-reply to VeyeZER's reply to the Defendants' opposition to VeyeZER's motion for a preliminary injunction. Reply to Resp. to Mot. for Preliminary Injunction, ECF No. 39 ("Sur-Reply to Mot. Prelim. Inj.").

## II.    STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 9(b)

A plaintiff alleging statutory or common law fraud must also comply with Federal Rule of Civil Procedure 9(b), which requires a party to state the circumstances constituting fraud "with particularity." Fed. R. Civ. P. 9(b). "Specifically, the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("[T]he 'complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were

made, and identify those responsible for the statements.'" (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989))). Although a plaintiff may plead generally the requisite fraudulent intent, he must allege facts giving rise to a strong inference of fraudulent intent, which may include facts showing that the defendants had both motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006); *see also O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (holding that an inference of scienter must be supported by "ample factual basis").

### B.  Federal Rule of Civil Procedure 12(b)(1)

Federal courts are "courts of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The court also may resolve disputed jurisdictional fact issues, however, "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

### C.  Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### D.  Federal Rule of Procedure 65

Preliminary injunctive relief is an extraordinary remedy and not a matter of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction under Federal Rule of Civil Procedure 65, a movant "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quoting *Winter*, 555 U.S. at 20); *see also Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

Furthermore, a "district court has wide discretion in determining whether to grant a preliminary injunction." *Moore v. Consolidated Edison Co. of N.Y., Inc.*, 409 F.3d 506, 511 (2d Cir. 2005) (Sotomayor, J.). "'It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)

(quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948 (2d ed. 1995) (citations omitted)) (emphasis in original).

"The Second Circuit has, further, differentiated between injunctions that propose to alter the status quo (mandatory injunctions) and those that merely seek to maintain it (prohibitory injunctions)." *XL Specialty Ins. Co. v. Level Global Investors, L.P.*, 874 F.Supp.2d 263, 271 (S.D.N.Y. 2012). Mandatory injunctions may "'issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Id.* (quoting *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011)). A prohibitory injunction, in contrast, may be issued on a showing of "'(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party question the preliminary relief.'" *Id.* (quoting *Citigroup Global Mkts., Inc., v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2018).

III.    **DISCUSSION**

The Defendants have moved to dismiss the federal trademark and copyright claims, as well as the state law claims of fraud, fraudulent concealment, unjust enrichment and constructive trust.

Because dismissal of the two federal claims would leave only state law claims remaining in this lawsuit, including the state law claims not raised in Defendant' motion, breach of contract, and breach of contract and breach of the implied covenant of good faith and fair dealing, the Court will address these two federal claims. And, if their dismissal is warranted, the Court will discuss whether a continuing basis remains for federal court supervision, or whether this case should be remanded back to Connecticut Superior Court.

### A.  The Trademark Infringement Claim (Count 3)

The Lanham Act, provides, in relevant part, that:

Any person who shall, without the consent of the registrant – (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereafter provided.

15 U.S.C. § 1114 (1).

A plaintiff must satisfy four elements to state a plausible trademark infringement claim under the Lanham Act: "(1) it has a valid mark that is entitled protection [under] the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services . . . without the plaintiff's consent." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-7 (2d Cir. 2005) (internal quotations and citations omitted). "In addition, the plaintiff must show that defendant's use of that mark 'is likely to cause confusion ... as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff].'" *Id.* (citations omitted) (alterations in original).

The Defendants argue that this claim should be dismissed because of the parties' binding settlement agreement. In their view, this claim "fail[s] as a matter of law because the Release executed by the Plaintiffs in favor of the Defendants less than a year prior to this action 'constitutes a complete bar to an action on a claim which is the subject of the release,'" Mot. at 12, and cite to the Connecticut Supreme Court's decision in *Tallmadge Bros., Inc. v. Iroquis Gas Transmission Sys., L.P.*, 252 Conn. 479, 481 (Conn. 2000). There, the Connecticut Supreme Court held that "a general release and a merger clause contained in contracts between commercial parties operates to preclude future claims of contractual liability against the party for

13

whose benefit the general release was executed[.]" Mot. at 12–13. In addition, they argue that is not plausible under FRCP 12(b)(6) because VeyeZER does not allege sufficient facts to satisfy each of the elements or otherwise specify how each particular defendant allegedly engaged in actionable action." *Id.* at 2.

In response, the Plaintiffs argue that "[b]ecause the facts underlying Plaintiffs' claims for Trademark and Copyright Infringement had not yet occurred at the time of the release, and those claims were not 'in being' at the time of the release, they are not covered by it." Opp'n at 14, citing to the Connecticut Supreme Court's decision in *Muldoon v. Homestead Insulation Co.*, 650 A.2d 1240 (Conn. 1994). *Id.*

In reply, the Defendants argue that "[t]he business breakup agreement includes an all-encompassing release that included 'all known and unknown claims,' 'whether or not apparent or yet to be discovered, or which may hereafter develop . . . .' [and that] [r]eleases with similar language have been upheld by Connecticut courts," Reply at 5–6, again relying on *Tallmadge Bros., Inc.*

The Court agrees.

Under Connecticut law, a court must construe the language of a written contract to give effect to "the intent of the parties," which a court determines "from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 279, 290, 838 A.2d 135 (2004) (quoting *Poole v. City of Waterbury*, 266 Conn. 68, 87–88, 831 A.2d 211 (2003)). In doing so, a court must accord the language "common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *Id.* If the language is "clear and unambiguous, the contract is to be given effect according to its terms." *Id.*

"'It is well settled that a release, being a contract whereby a party abandons a claim to a person against whom that claim exists, is subject to rules governing the construction of contracts.'" *Giano v. Salvatore*, 46 A.3d 996, 1002 (Conn. App. 2012) (quoting *Embalmers' Supply Co. v. Giannitti,* 103 Conn. App. 20, 42, 929 A.2d 729, *cert. denied*, 934 A.2d 246 (2007)).

The language of the release in this case is clear and not disputed by the parties:

3. <u>Mutual Release</u>. The Parties . . .  hereby release and discharge the other Party . . . from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands . . . of any nature whatsoever, known or unknown, which either Party has, or may have had, against the other Party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from:

(a)  the ownership, management and operations of VeyeZER;
(b)  SphereGEN's development of, and any additional services provided by SphereGEN related to, the VA Software, the VG Software and the PAVE Software
(c) any agreement between the Parties;
(d) any other matter between the Parties; and/or
(e) any claims under federal, state, or local law, rule, or regulation

This Agreement resolves any claim for relief that is, or could have been alleged, no matter how characterized . . . related to or arising from the items in Sections 3(a) through (e) above."

Amd. Compl. at 28 (displaying page four of the Confidential Settlement Agreement and Release)

The only remaining issue is its scope: whether this specific release addresses any and all claims that arose after its execution. The answer is yes.

Notwithstanding the Connecticut Supreme Court's decision in *Muldoon*, a decision best understood as arising out of and addressing a specific public policy interest—ensuring broad workers' compensation protection, see *Muldoon*, 550 A.2d at 1246 ("To deprive a worker, such as Muldoon, of coverage for new injuries from subsequent exposures to asbestos would violate public policy and contravene the purpose of the [Workers' Compensation Act], which is to provide coverage for employees who are injured on the job.")—Connecticut's courts, including

the Connecticut Supreme Court, have consistently held private parties in commercial settings to the bargains contained in broad releases specifically covering future claims.

Indeed, more than half a decade after *Muldoon*, the Connecticut Supreme Court decided "whether a general release and merger clause contained in contracts between commercial parties operates to preclude any future claims of contractual liability against the party for whose benefit the general release was executed," *Tallmadge*, 746 A.2d at 1279, held that "under the circumstances of [*Tallmadge*], the unambiguous language of the parties' contracts precludes any such claims of liability," *id.*, and therefore, the release did bar "incidental destruction not contemplated by the parties at the time when the settlement agreements were drafted." *Id.* at 1289.

"[I]n the context of commercial contracts, [the Connecticut Supreme Court] assume[d] that definite contract language is the best indication of the result anticipated by the parties in their contractual arrangements." *Id.* And "settlement agreements will not serve their purpose of putting opposing claims to rest if, despite a fairly negotiated comprehensive and unambiguous merger clause, they remain subject to judicial revision." *Id.* at 1292; *see also Merrick v. Cummin*, 919 A.2d 495, 499 (Conn. App. 2007) ("At most, the cases cited by the plaintiff indicate a generalized concern with fiduciary duty and the contractual release of certain types of future claims. That generalized concern, however, is not enough to enable the plaintiff to satisfy his heavy burden of showing the existence of a Connecticut public policy prohibiting equally sophisticated business partners from signing a settlement agreement providing for the waiver of future claims regarding breach of fiduciary duty."). [3]

---

[3] In *Crabtree v. Hope's Windows, Inc.*, No. 3:17-CV-01709 (VAB), 2018 WL 2436992 (D. Conn. May 30, 2018), this Court noted that "In *Tallmadge*, the court held that a release provision that precluded liability for the defendant 'by reason of any matter, cause or thing whatsoever, incident to the construction of [a pipeline], and any acts in

As a result, the Plaintiffs' trademark infringement claim is a claim within the scope of the parties' Settlement Agreement with Mutual Releases. *See* Amd. Compl. at 28 (Confidential Settlement Agreement and Release at 4) ("releas[ing] and discharg[ing] the other Party . . . from all known and unknown . . . claims . . . of any nature whatsoever, known or unknown . . . whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from . . . any claims under federal, state, or local law, rule, or regulation."); *see id* at 2 (Confidential Settlement Agreement and Release at 2) ("VeyeZER and the VeyeZER Parties hereby assign and transfer to SphereGen all of their respective right, title, and interest to the VG software."); *see also Viera v. Cohen*, 927 A.2d 843, 854 (Conn. 2007) ("A release is an agreement to give up or discharge a claim. It terminates litigation or a dispute and is meant to be a final expression of settlement.") (internal quotation marks and citations omitted); *cf. Shugrue v. Continental Airlines, Inc.*, 977 F. Supp. 280, 285 (S.D.N.Y. 1997) (recognizing that use of "all right, title, and interest" language "confirms that the parties intended for the intellectual property to be transferred . . . . [i]f the parties to such a transaction intend to transfer just a license to use the program, with the transferor retaining the copyrights, the parties surely would spell that out.").[4]

---

connection therewith,' barred not [sic] the plaintiff from recovering for 'incidental destruction not contemplated by the parties at the time when the settlement agreements were drafted.' *Tallmadge Bros.*, 252 Conn. at 499, 746 A.2d 1277. *Tallmadge* succeeds *Muldoon* and may very well have, *sub silentio*, overruled it, but, because Mr. Crabtree complains of an inchoate defect, the Court need not, and does not, decide whether *Tallmadge* and *Muldoon* are in conflict." *Crabtree*, at *7 n.8.

[4] Significantly, none of the cases cited by the Plaintiffs for the proposition that the federal trademark claim must survive, even after the execution of the Settlement Agreement with Mutual Releases, involve releases of the scope and magnitude of this one, to the extent they involve a release at all. *See Coach House Restaurant, Inc.* v. *Coach and Six Restaurants, Inc.*,934 F.2d 1551, 1563 (11th Cir. 1991) (noting that "there was no formal agreement" and that "an implied license is terminable at will"); *Conagra Inc. v. Singleton*, 743 F.2d 1508, 1511 (11th Cir. 1984) ("Conagra filed the instant lawsuit in June of 1981, after had failed to negotiate a settlement regarding the defendant's continued use of the Singleton name."); *Professional Golfers Ass'n of America v. Bankers Life & Cas. Co.*, 514 F.2d 665, 669 (5th Cir. 1975) ("Though the pertinent [settlement and related agreements] do not speak directly of a "license" to use the symbol "PGA," we think the clear import of the contracts bespeaks such an arrangement."); *University of Pittsburgh v. Champion Products, Inc.*, 686 F.2d 1040, 1043-44 (3d Cir. 1982)

Accordingly, the federal trademark infringement claim, Count 3, will be dismissed.[5]

## B.  The Copyright Claim (Count 4)

Under Section 501(b) of the Copyright Act, "[t]he legal or beneficial owner of an exclusive right under copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). The six exclusive rights in copyrighted works enumerated under the Copyright Act include: the right to reproduce the work, the right to prepare derivative works, the right to publicly distribute the work, the right to perform the work, the right to display the work, and the right to perform the work by means of digital transition. 17 U.S.C. § 106. "Copyright registration is generally a prerequisite to bringing a civil copyright infringement action." *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583, 597 (D. Conn. 2019); *see also* 17 U.S.C. § 411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made."). To succeed with a copyright infringement claim, a plaintiff must show "(1) ownership of a valid copyright and (2) infringement of a copyright by the defendant." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001)).

To obtain a copyright, a work "must be original—that is, it must be independently created by the author and possess 'at least some minimal degree of creativity.'" *S Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012) (citing *Feist Publ'g, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)). And "the requisite level of creativity is extremely low;

---

(involving no settlement agreement between the parties but instead "[a] bench trial on the issue of liability . . . on December 10-11 and 14-17, 1981, and on January 7, 1982 . . . ."); *see also Dumdei v. Certified Fin. Planner Bd. of Standards, Inc.*, No. CIV. 398CV1938H, 1999 WL 787402, at *5 (N.D. Tex. Oct. 1, 1999) (not involving a settlement agreement but instead "[a]n implied license . . . aris[ing] from conduct of the parties from which the existence of an agreement could reasonably be inferred.") (citations omitted).

[5] Because the Court will dismiss the Plaintiffs' trademark infringement claim for the reasons stated above, the Court need not and does not address Defendants' alternative grounds for this claim's dismissal.

even a slight amount will suffice." *Feist*, 499 U.S. at 345. "A certificate of copyright registration is prima facie evidence of ownership of a valid copyright, but the alleged infringer may rebut that presumption." *Scholz Design*, 691 F.3d at 186; 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate"); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) (finding that an alleged infringer bears the burden of rebutting presumption of copyright validity).

To establish copyright infringement, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citing *Hamil*, 193 F.3d at 99).

The Defendants argue that the Settlement Agreement with Mutual Releases also forecloses the Plaintiffs' copyright claim. Mot. at 2. In addition, in their view, VeyeZER has not met the Copyright Act's mandatory prerequisites for bringing a copyright claim, has not pled sufficient facts to meet the beneficial ownership test, and has improperly lumped together the corporate defendants and has not articulated the wrongful conduct allegedly undertaken by each defendant." *Id.* at 3.

In response, the Plaintiffs argue, once again, that this claim is not foreclosed by the previous settlement, and that they have adequately plead this claim.

The Court disagrees.

For the same reasons discussed above, with respect to the trademark infringement claim, any federal copyright claim is a claim within the scope of the parties' Settlement Agreement with Mutual Releases. *See* Amd. Compl. at 28 (Confidential Settlement Agreement and Release at 4) ("releas[ing] and discharg[ing] the other Party . . . from all known and unknown . . . claims . . . of any nature whatsoever, known or unknown . . . whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from . . . any claims under federal, state, or local law, rule, or regulation."); *see id* at 2 (Confidential Settlement Agreement and Release at 2) ("VeyeZER and the VeyeZER Parties hereby assign and transfer to SphereGen all of their respective right, title, and interest to the VG software."); *see also Viera v. Cohen*, 927 A.2d 843, 854 (Conn. 2007) ("A release is an agreement to give up or discharge a claim. It terminates litigation or a dispute and is meant to be a final expression of settlement.") (internal quotation marks and citations omitted); *see Shugrue v. Continental Airlines, Inc.*, 977 F. Supp. 280, 285 (S.D.N.Y. 1997) (recognizing that use of "all right, title, and interest" language "confirms that the parties intended for the intellectual property to be transferred . . . . [i]f the parties to such a transaction intend to transfer just a license to use the program, with the transferor retaining the copyrights, the parties surely would spell that out."). As a result, any federal copyright claim will have to be dismissed.

Because the Plaintiffs also suggest that a "common law copyright claim" exists,[6] one analytically distinct from its federal copyright claim, and one not preempted by the federal Copyright Act, *id.* (suggesting that the "Plaintiffs seek protection of works or aspects thereof that

---

[6] The Plaintiffs' assertion that "[u]nregistered copyrights . . . remain, enforceable under state common law," *see* Opp'n at 20, is incorrect because "[t]he 1976 Copyright Act ended common law copyright protection for all works that are the subject of federal preemption." *Capitol Recs., Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 477 (2d Cir.), *certified question accepted*, 3 N.Y.3d 666, 817 N.E.2d 820 (2004), *and certified question answered*, 4 N.Y.3d 540, 830 N.E.2d 250 (2005).

are 'uncopyrightable' under the federal Copyright Act."), this Court also will examine whether

any such state law claim is preempted by federal law, a plausible basis for continuing this

Court's jurisdiction over this case, in the absence of any express federal claims. *See Genius*

*Media Grp. Inc. v. Google LLC*, No. 19-CV-7279 (MKB), 2020 WL 5553639, at *17 (E.D.N.Y.

Aug. 10, 2020) ("The Second Circuit has held that the 'complete preemption doctrine' extends to

the Copyright Act, because it is a 'federal statute that both preempts state law and substitutes a

federal remedy for that law, thereby creating an exclusive federal cause of action,' and

'therefore ... the district courts have jurisdiction over state law claims preempted by the

Copyright Act.'" (citing *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d

Cir. 2004)), *aff'd sub nom. ML Genius Holdings LLC v. Google LLC*, No. 20-3113, 2022 WL

710744 (2d Cir. Mar. 10, 2022); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22,

27-28 (2025) (The removal statute "grants federal district courts "original jurisdiction' over cases

presenting a federal question. . . . . Because the case falls within the federal courts' 'original

jurisdiction,' the defendant may remove[ ] it from state to federal court. . . . . Except that if at any

time before final judgment it appears that the district court lacks subject matter jurisdiction, the

case must be remanded to state court. . . .When [federal courts] do not have (or no longer have)

authorization to resolve a suit, they must hand it over.").

        "[A] fundamental principle of the Constitution is that Congress has the power to preempt

state law." *Melendez v. Sirius XM Radio, Inc.*, 50 F. 4th 294, 300 (2d Cir. 2022) (internal

quotation marks and citation omitted). "The Copyright Act preempts state law claims asserting

rights equivalent to those protected within the general scope of the statute." *Id.* (internal

quotation marks and citation omitted). "In applying this statute to determine if a state law claim

is preempted by the Copyright Act, courts in this Circuit apply a two-part test, both parts of

which must be satisfied for preemption to apply." *Id.* (citation omitted). "The subject matter requirement of the test is satisfied when the plaintiff's claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." *Id.* (internal quotation marks and citation omitted). "For the general scope requirement of the test to be satisfied, the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Id.* (internal quotation marks and citation omitted).

As to the first test, the subject matter requirement, "a work does not have to consist entirely of copyrightable material." *Id.* (internal quotation marks and citation omitted). It "need only fit into one of the copyrightable categories in a broad sense." *Id.* (internal quotation marks and citation omitted).

As to the second test, the general scope requirement, "a court looks at the right being asserted (over a work that comes within the subject matter of copyright) and requires (for preemption to apply) that the right be *equivalent* to any of the exclusive rights within the *general scope of copyright* as specified by section 106 [of the Copyright Act]." *Id.* (internal quotation marks and citation omitted) (emphasis in original). "[F]or preemption to apply, the state law claims must involve acts of reproduction, adaptation, performance, distribution or display, and not include any extra elements that make it qualitatively different from a copyright infringement claim." *Id.* (internal quotation marks and citation omitted).

In applying this two-part test, "[r]ather than simply performing a mechanical search for extra elements, courts must instead engage in a holistic evaluation of the nature of the rights sought to be enforced and then make a determination whether the state law action is *qualitatively* different from a copyright infringement claim." *Id.* (internal quotation marks and citation

omitted)(emphasis in original). Because "[o]nly if the claim differs qualitatively from a copyright infringement claim will preemption not apply." *Id.* (internal quotation marks and citation omitted).

Here, the application of this two-part test results in preemption of any alleged "common law copyright claim" asserted by the Plaintiffs. Significantly, VeyeZER alleges to be "the beneficial copyright owner of [VeyeZERGraph] Videos," Amended Complaint ¶ 61, that Defendants have "use[d] the Videos on their YouTube site," *id.* ¶ *67,* that this use "infringe[s] VeyeZER's copyright interests," *id.* ¶ 68, and "[a]t no time has VeyeZER authorized defendants to reproduce, adapt, or distribute the Videos." *Id.* ¶ 69. These videos then are the "subject matter" at issue in Plaintiff's Amended Complaint, and "[u]nder Section 102(a) of the Copyright Act, 'works of authorship' include, among other things, 'motion pictures and other audiovisual works' and 'sound recordings." *Melendez*, 50 F.4th at 300 (citing 17 U.S.C. Section 102(a)(6), (a)(7). Thus, these Videos and the Plaintiffs' concerns about Defendants' alleged use of them, even if characterized as a "common law" claim, satisfy the subject matter prong of the statutory preemption test.

For similar reasons, the Plaintiffs' allegations in their Amended Complaint also satisfy the general scope prong of the statutory preemption test. The Plaintiffs' allegations focus on the Defendants' "use" and their "reproduc[ing], adapt[ing, or distribut[ing] these Videos." *See* Amended Complaint ¶¶ 67–69. Thus, their state law claim involves "acts of reproduction, adaptation, performance, distribution or display," *Melendez*, 50 F.4th at 302, to which preemption is applicable.[7]

---

[7] While the Plaintiffs argue that "further development of the facts is necessary to establish that Plaintiffs seek protection of works or aspects thereof that are "uncopyrightable under the federal Copyright Act, and the issue is premature for resolution on a motion to dismiss," Opp'n at 21, the straightforward allegations in their Amended

As a result, any alleged common law claim existing under Connecticut law brought by the Plaintiffs is preempted by the federal Copyright Act.

Accordingly, any claim in Count 4, whether under the Copyright Act or state law, will be dismissed.[8]

### C.  Preliminary Injunction

To obtain a preliminary injunction under Federal Rule of Civil Procedure 65, a movant "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *N.Y. Progress & Prot. PAC*, 733 F.3d at 486 (quoting *Winter*, 555 U.S. at 20); *see also Moore*, 409 F.3d at 510.

Mandatory injunctions may "'issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *XL Specialty Ins. Co.*, 874 F.Supp.2d at 271 (S.D.N.Y. 2012) (quoting *Cacchillo*, 638 F.3d at 406 (2d Cir. 2011)). A prohibitory injunction, in contrast, may be issued on a showing of "'(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and

---

Complaint, as discussed above, suggest otherwise. *See also Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir. 1997) ("Copyrightable material often contains uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements."); *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 284 (S.D.N.Y. 2001) ("It is well-established that computer programs are protected by copyright law as literary works. (citing *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 702 (2d Cir.1992)). To the extent, however, there are "any additional allegations that [they] could assert in a second amended complaint," *Melendez*, 50 F.4th at 309, as discussed below, the Court will provide one final opportunity for them to do so. But any such proposed amended copyright claim must be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

[8] As with the trademark infringement claim, because the Court will dismiss it, for the reasons stated above, the Court need not and does not address Defendants' alternative grounds for this claim's dismissal, although the Court notes that registration of the allegedly infringed works is required to bring Plaintiffs' copyright claim. *See* 17 U.S.C. § 411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made.").

a balance of hardships tipping decidedly toward the party question the preliminary relief.'" *Id.* (quoting *Citigroup Global Mkts., Inc.*, 598 F.3d at 35.

The Plaintiffs seek a preliminary injunction because the Defendants "continue to unlawfully infringe on the registered Trademark "Veyezer". Mot. Prelim. Inj. at 1.

The Defendants argue that "since Plaintiffs' motion for preliminary injunction (ECF 19) is entirely premised upon a legally deficient trademark claim (Count 3), it should be denied as moot." Reply at 11.

The Court agrees.

Since the trademark infringement claim has been dismissed, the motion for a preliminary injunction for trademark infringement is denied as moot. *See e.g.*, *Lafferty v. Virts*, No. 23-CV-358 (JLS), 2024 WL 4134254, at *14 (W.D.N.Y. Sept. 10, 2024) ("Where a plaintiff's claims fail to state a claim upon which relief can be granted and are being dismissed, the plaintiff's motion for injunctive relief must be denied.") (citing *Broecker v. New York City Dep't of Educ.*, No. 23-655, 2023 WL 8888588, at *3 (2d Cir. Dec. 26, 2023) (summary order) ("Finally, because the underlying claims have been dismissed, we deny as moot plaintiffs' challenges to the district court's denials of their motions for a preliminary injunction" (citing *Ruby v. Pan Am. World Airways, Inc.*, 360 F.2d 691, 691–92 (2d Cir. 1966))).

## D. The Remaining State Law Claims

Having decided to dismiss the Plaintiffs' federal law claims, the Court must determine whether it should retain supplemental jurisdiction over the Plaintiffs' remaining state law claims.

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Technology, Inc., v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The

district courts may decline to exercise supplemental jurisdiction over a claim under subsection

(a) if . . . the district court has dismissed all claims over which it had original jurisdiction[.]").

Nevertheless, "in the usual case in which all federal-law claims are eliminated before trial, the

balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy,

convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the

remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Indeed, as the U.S. Supreme Court very recently noted, because "[t]he federal court has

supplemental jurisdiction over state-law claims sharing a common nucleus of operative fact with

the federal-law ones," *Royal Canin U.S.A., Inc.*, 604 U.S. at 31 (internal quotation marks and

citation omitted), once the federal claims are eliminated, "federal law is not where the action is."

*Id.* at 32. As a result, "the court may (and indeed, ordinarily should) kick the case to state court."

*Id.; see id.* at 28 ("[I]f at any time before final judgment it appears that the district court lacks

subject matter jurisdiction, the case must be remanded to state court. . . .When [federal courts] do

not have (or no longer have) authorization to resolve a suit, they must hand it over."); *see also*

*Zuro v. Town of Darien,* 432 F. Supp. 3d 118, 130 (D. Conn. 2020) ("Here, because all of the

federal claims have been dismissed early in the action, I decline to exercise supplemental

jurisdiction over the remaining state law claims."); *Traylor v. Hammond*, 94 F. Supp. 3d 203,

224 (D. Conn. 2015) (declining to exercise supplemental jurisdiction when "[a]ll of federal

claims in the Amended Complaint ha[d] been dismissed").

Accordingly, the Court will decline to continue exercising supplemental jurisdiction over

any remaining state law claims and will remand them back to Connecticut state court.

### E.  Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course no later
> than: (A) 21 days after serving it, or (B) if the pleading is one to
> which a responsive pleading is required, 21 days after service of a
> responsive pleading or 21 days after service of a motion under Rule
> 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the

opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court

should freely give leave when justice so requires." *Id.* The district court has broad discretion to

decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien

Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive

on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or]

futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l

Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be

denied when amendment is "unlikely to be productive," such as when an amendment is "futile"

and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for

leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip

Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d

Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed

amendments would have no impact on the basis for the district court's dismissal and would

consequently be futile, the district court did not abuse its discretion in denying [the plaintiff]

leave to amend." (citing *Ellis*, 336 F.3d at 127)).

Because the federal trademark and copyright infringement claims are barred by release—

leave to amend on those claims would be futile. *See e.g.*, *Crabtree*, 2018 WL 2436992, at *11

(D. Conn. May 30, 2018) ("Given that the Release bars Mr. Crabtree's claim of products liability, the Court denies Mr. Crabtree's motion to amend because, even if timely, it would be futile."); *Genao v. Ruiz*, No. 24-CV-2077 (LJL), 2025 WL 219160, at *7 (S.D.N.Y. Jan. 16, 2025) ("Based on the Court's foregoing analysis of the enforceability of the General Release, granting Plaintiff leave to amend would be futile.") (citing various other Southern District of New York cases denying leave to amend due to underlying claims being barred by release); *Long v. Corning Inc.*, 847 F. App'x 74, 76 (2d Cir. 2021) (summary order) ("Nor did the District Court err in denying Long leave to amend his complaint, in light of the release of claims to which Long agreed in the separation agreement with Corning.").

To the extent, however, that the Plaintiffs can plead a plausible claim under Connecticut law—not preempted by the federal Copyright Act—the Court will permit the Plaintiffs to seek leave to file a Second Amended Complaint, if they can appropriately do so.[9]

Accordingly, any federal trademark infringement and copyright infringement claims will be dismissed with prejudice, and any other claim under Connecticut law will be dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants motion to dismiss is **GRANTED in part and DENIED in part**, any federal trademark infringement and copyright claims within Counts 3 and 4 of the Amended Complaint are **DISMISSED with prejudice,** and VeyeZER's motion for preliminary injunction is **DENIED**.

---

[9] As noted above, the Copyright Act of 1976 has abrogated common law copyright claims for unregistered works, and thus any "common law copyright claim" for Plaintiffs' unregistered works would be preempted by federal law. *Capitol Recs.*, 372 F.3d at 477 ("The 1976 Copyright Act ended common law copyright protection for all works that are the subject of federal preemption.").

All of the remaining state law claims will be dismissed without prejudice, and remanded back to the Superior Court for the State of Connecticut, Judicial District of New Haven, although any such remand will await further adjudication, to the extent that the Plaintiffs seek to file a motion for leave to file a Second Amended Complaint with a claim under Connecticut law, not preempted by the federal Copyright Act, by **April 18, 2025**.

If, after the Court's review of such a proposed claim, a viable claim under Connecticut law exists that is not preempted by the Copyright Act, all state law claims, including any new state law claim, will be remanded back to the Superior Court for the State of Connecticut, Judicial District of New Haven.

If a motion for leave to file a Second Amended Complaint with a viable, non-preempted claim under Connecticut law is not filed by **April 18, 2025,** then the Court will issue an order dismissing all state law claims without prejudice and remanding the case back to the Superior Court for the State of Connecticut, Judicial District of New Haven.

**SO ORDERED** at New Haven, Connecticut, this 28th day of March, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE